UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-148-TBR

CINDY MITCHELL                   Plaintiff

v.

QUALITEST PHARMACEUTICALS          Defendant

## MEMORANDUM OPINION

This matter comes before the Court upon Defendant Generics Bidco I, LLC's (d/b/a Par Pharmaceutical), incorrectly named in Plaintiff's Complaint as Qualitest Pharmaceuticals,[1] Motion to Dismiss for failure to state a claim. (Docket No. 9.) Plaintiff Cindy Mitchell has responded. (Docket No. 11.) Defendant did not file a Reply. Fully briefed, this matter is ripe for adjudication. For the reasons enumerated below, the Court will GRANT Defendant's Motion.

Factual Background

Defendant Generics Bidco, I LLC ("Bidco") manufactures generic drugs. (Docket No. 9-1 at 2.) Bidco manufactures a generic form of the name-brand drug Norco. *Id.* at 1-2, 4. Bidco explains that "Norco is a registered trademark for an FDA-approved prescription drug containing the active ingredients hydrocodone bitartrate and acetaminophen." *Id.* at 3. Watson Laboratories, Inc. ("Watson"), not Bidco, is the name-brand manufacturer that "holds the FDA approval for Norco."[2] *Id.*

---

[1] Generics Bidco I, LLC, formerly did business as Qualitest Pharmaceuticals, Inc. (Docket No. 9-1 at 1 n.1.)
[2] In its Motion to Dismiss, Bidco urges the Court to take judicial notice that Watson is the name-brand manufacturer of Norco. (Docket No. 9-1 at 3.) The Sixth Circuit Court of Appeals has stated that "[g]enerally, at the motion-to-dismiss stage, a federal court may consider only the Plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997)). Usually, if a court considers matters outside of the plaintiff's complaint, it must treat the motion to dismiss "as one for summary

1

Plaintiff Cindy Mitchell, proceeding *pro se*, alleges that she has "been on . . . Norco 10/325 . . . since 2013 [and her] body is now physically addicted to it." (Docket No. 1 at 2.) Ms. Mitchell contends that she cannot "go a day without at least 2-3 pills." *Id.* She also states that if she does not have this medication, she "become[s] very ill and at times [has] even attempted to buy [this medication] off the street to keep from being so ill." *Id.* Ms. Mitchell argues that she does not abuse this medication but her "body cannot function without at least 2-3 . . . pills per day[]." *Id.* She is seeking to recover $125,000 from Bidco due to her alleged dependency on Norco. *Id.*

## Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Civil Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

---

judgment under Rule 56." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting Fed. R. Civ. P. 12(d)). However, according to the Sixth Circuit, a court may consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies" when ruling on a motion to dismiss without converting it to a motion for summary judgment under Rule 56. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). Rule 201(b)(2) of the Federal Rules of Evidence allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Ultimately, this Court may take judicial notice of FDA records which show that Watson, not the Defendant Bidco, is the approved name-brand manufacturer of Norco. Because the accuracy of FDA records cannot reasonably be questioned, the FDA's approval of Watson as the name-brand manufacturer of Norco 10/325 is a fact subject to judicial notice. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). While Bidco provided the Court with a link to the FDA's approval of Norco 5/325 as proof that Watson is the manufacturer of Norco, Ms. Mitchell alleges that she has been harmed by her use of Norco 10/325 (Docket Nos. 1 at 2; 9-1 at 3.) The Court has identified an identical document with regards to Norco 10/325. FDA, Approval of Labeling 7-8 (Sep. 12, 2000), http://www.accessdata.fda.gov/drugsatfda_docs/nda/2000/040148s.pdf. This document demonstrates that Watson is the brand-name manufacturer who received approval from the FDA for Norco 10/325. Consequently, the Court takes judicial notice that Watson Laboratories, Inc. is the manufacturer of the name-brand drug Norco.

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Id.* at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

Federal courts apply a less stringent standard to *pro se* pleadings than formal pleadings drafted by attorneys. *Cox v. Hiland*, No. 5:13-CV-00179, 2014 WL 7150046, at *1 (W.D. Ky. Dec. 15, 2014) (first citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); then citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). Consequently, this Court must liberally construe a *pro se* plaintiff's complaint. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). However, "[this Court's] duty to be 'less stringent' with *pro se* complaints does not require [it] to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). Accordingly, this Court is not required "to explore exhaustively all potential claims of a *pro se* plaintiff," as this would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Only well-pled factual allegations contained in the complaint and amended complaint are considered on motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

Discussion

As Bidco does not manufacture the name-brand drug Norco, the Court could dismiss Ms. Mitchell's claims solely on the grounds that she has not filed suit against the correct entity. However, "federal courts [are to] apply a less stringent standard to *pro se* pleadings than formal pleadings drafted by attorneys." *Cox v. Hiland*, No. 5:13-CV-00179, 2014 WL 7150046, at *1 (W.D. Ky. Dec. 15, 2014). When this Court liberally construes Ms. Mitchell's Complaint, as it must do, the Court finds that her complaint asserts state law claims against Bidco for injuries that she allegedly incurred as a result of taking Bidco's generic drug hydrocodone bitartrate and acetaminophen.

With regards to the specific claims asserted by Ms. Mitchell, when this Court liberally construes the allegations in her Complaint, this Court finds that she alleges claims for failure-to-warn and design defect pursuant to Kentucky's Product Liability Act ("PLA"). Ky. Rev. Stat. § 411.300 *et seq.* This Act allows plaintiffs to bring a product liability action. *See* KRS § 411.300. Under Kentucky law, a products liability action is any action alleging "personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." KRS § 411.300. According to the Kentucky Supreme Court, "[t]he PLA applies to all damage claims arising from the use of products, regardless of the legal theory advanced." *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997).[3]

---

[3] The Kentucky Supreme Court reasoned that "if a claim is brought against a seller or a manufacturer of a product which is alleged to have caused injury, then the PLA applies, regardless of whether the action is founded on strict liability in tort, negligence or breach of warranty. While each of these theories of recovery in products liability cases requires proof of different elements and has different implications, (*Williams v. Fulmer*, 695 S.W.2d 411 (Ky.

4

Defendant Bidco argues that as its manufactures a generic version of hydrocodone bitartrate and acetaminophen, any state law claims that Ms. Mitchell asserts against it must be dismissed because they are preempted by federal law. (Docket No. 9-1 at 6.) Ms. Mitchell's Response does not address Bidco's argument. (Docket No. 11.)

The federal preemption doctrine is rooted in the Supremacy Clause of the United States Constitution. *State Farm Bank v. Reardon*, 539 F.3d 336, 341 (6th Cir. 2008). The Supremacy Clause of the United States Constitution establishes that federal law "shall be the supreme Law of the Land." U.S. Const., art. VI, cl. 2.

Federal preemption can take several forms. "Federal law may preempt state law either expressly or impliedly." *Id*. (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982)). The Supreme Court has recognized at least two types of implied preemption: field preemption and conflict preemption. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). Conflict preemption occurs where compliance with both federal and state regulation is physically impossible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations and quotations omitted). The Supreme Court has established that "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (quoting *Wyeth v. Levine*, 555 U.S. 555, 583 (2009) (Thomas, J., concurring)).

Bidco bases its federal preemption argument on conflict preemption. (Docket No. 9-1 at 6.) Bidco argues that under federal law, manufacturers of generic drugs cannot unilaterally alter their labeling and formulas and, therefore, state laws that impose heightened warning or design standards on generic drug manufacturers are in direct conflict with federal law. *Id*. The Court

---

1985)), their central purpose is the same: recovery of damages for injury or property damage caused by a product." *Monsanto Co.*, 950 S.W.2d at 814.

must first address the federal law governing the production of generic drugs before addressing Ms. Mitchell's claims for failure-to-warn and design defect, respectively.

## I. Federal Regulation of Generic Drugs

The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, charges the Food and Drug Administration ("FDA") with the responsibility of approving the introduction of new drugs on the market. *See* 21 U.S.C. § 355. A brand-name manufacturer seeking to market a new drug must submit a New Drug Application ("NDA") with the FDA. 21 U.S.C. § 355(b). The NDA requires, among other things, that the manufacturer supply the agency with "full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use" and "specimens of the labeling proposed to be used for such drug." 21 U.S.C. § 355(b)(1). The FDA can refuse to approve the NDA if the manufacturer fails to provide "adequate tests" or there is "insufficient information" to ensure the new drug's safety and effectiveness. 21 U.S.C. § 355(d).

In contrast, generic manufacturers seeking to market a generic drug must submit an Abbreviated New Drug Application ("ANDA") with the FDA. 21 U.S.C. § 355(j). Congress codified the ANDA procedure with the passage of the Drug Price Competition and Patent Term Act (the Hatch-Waxman Amendments) in 1984. *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 581 (6th Cir. 2013). The ANDA procedure establishes an expedited FDA review process, "allow[ing] manufacturers to develop generic drugs inexpensively, without duplicating the clinical trials already performed on the equivalent brand-name drug." *Mensing*, 564 U.S. at 612. To receive FDA approval, the manufacturer must demonstrate that the generic drug it seeks to market is approved as a listed drug, meaning that the new drug product on which the generic drug is based

6

already has FDA approval. 21 U.S.C. § 355(j)(2)(A)(i). The manufacturer must show that the generic drug has the same active ingredients and is "bioequivalent" to the listed drug. 21 U.S.C. § 355(j)(2)(A)(ii)-(iv). Additionally, the manufacturer must supply "information to show that the labeling proposed for the [generic] drug is the same as the labeling approved for the listed drug . . . except for changes required because of differences approved under a petition filed under subparagraph (C) or because the [generic] drug and the listed drug are produced or distributed by different manufacturers." 21 U.S.C. § 355(j)(2)(A)(v).

After the generic drug is approved, the generic manufacturer's only continuing duty is one of "sameness" – that is, it must ensure that the warning label of the generic drug remains the same as the brand-name drug's label. *Mensing*, 564 U.S. at 613. Generic drug manufacturers are not permitted to independently change the labeling on their drugs. *Id.* at 614. The duty of "sameness" also applies to the design of the drug, as it must remain "identical in active ingredients, safety, and efficacy" to the brand-name drug. *Id.* at 612 n.1.

II.  Ms. Mitchell's Claims for Failure-to-Warn and Design Defect

This Court's analysis of Ms. Mitchell's claims against Bidco is guided by two relatively recent Supreme Court decisions: *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013). In *Mensing*, the Court held that state-law failure-to-warn claims against generic drug manufacturers are preempted by federal law. 564 U.S at 608. The Court extended that holding to reach state tort claims of design defects in *Bartlett*. 133 S. Ct. at 2470.

### A. Failure-to-Warn Claim

In *Mensing*, respondents alleged that the label of a generic drug did not adequately warn consumers of the drug's risk. 564 U.S. at 610. The Court compared state and federal law, first finding that the state law duty would require manufacturers to alter or improve their drug's label. *Id.* at 611-12. Next, the Court examined the FDCA, explaining that it required generic drug manufacturers to create and maintain their labels identically to the brand-name drug equivalent's label. *Id.* at 613. Any change to a generic drug's label would conflict with generic drug manufacturers' federal duty of maintaining "sameness," as they can only change a label in order to retain conformity with the brand-name drug's warnings. *Id.* at 614-15. The Court concluded that "it was impossible for the Manufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same." *Id.* Consequently, the Court held that state tort law failure-to-warn claims against generic drug manufacturers are preempted by federal law. *Id.* at 624.

Following the Supreme Court's decision in *Mensing*, "[t]he relevant preemption question [that courts must answer] . . . is whether a generic manufacturer can simultaneously comply with both its state and federal duties." *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 390 (6th Cir. 2013).

The Sixth Circuit has applied *Mensing* to Kentucky law. In *Smith v. Wyeth, Inc.*, 657 F.3d 420 (6th Cir. 2011), the court upheld the district court's granting of a motion to dismiss the plaintiffs' failure-to-warn claims brought pursuant to Kentucky's PLA against generic drug manufacturers. *Id.* at 422. The court found that *Mensing* preempted the claims, noting that the plaintiffs, like those in *Mensing*, "predicated the manufacturers' liability under state law on the failure to provide adequate warnings on the product's label." *Id.* at 423. The court noted that the

Supreme Court was unequivocal in holding that "federal law preempts state laws that impose on generic-drug manufacturers the duty to change a drug's label, thus barring the plaintiffs' state-law tort claims. The plain language of the [*Mensing*] decision compels the same result here." *Id.*; *see also Strayhorn*, 737 F.3d 378 (affirming the district court's grant of a motion to dismiss state tort law claims because they were preempted by federal law that expressly prohibited manufacturers of generic drugs from making any unilateral changes to the drug's label or design).

After reviewing the relevant case law, this Court concludes that Ms. Mitchell's failure-to-warn claim under the PLA is preempted by federal law. To the extent that Ms. Mitchell alleges that Bidco should have changed its labeling on its hydrocodone bitartrate and acetaminophen to better reflect the potential dangers or side effects posed by the drug, her claim is preempted. Federal law prevents Bidco from unilaterally altering the labels of its generic drug and, therefore, it is impossible for Bidco to simultaneously comply with both its state and federal duties. *See Mensing*, 564 U.S. at 613, 618-19; 21 U.S.C. § 355(j)(2)(A)(v).

B. Design Defect

In *Bartlett*, the Supreme Court reversed a jury award on a patient's design defect claim against a manufacturer of a generic drug, finding that state law design defect claims are also preempted by federal law. 133 S. Ct. at 2470. The Court found that the FDCA prevented the manufacturer of a generic drug from changing its composition. *Id.* at 2471, 2475. The Court explained that a generic manufacturer may not change a generic drug's composition as "the FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Id.* at 2475 (citations omitted). Thus, the only way for the manufacturer to escape liability would be to strengthen or alter the drug's warning. *Id.* at 2475. However, as noted before, federal law also

9

prevents a manufacturer of a generic drug from altering its drug's label. *Id.* at 2476. Because federal law "forbids an action that state law requires," the state law was "without effect" and was preempted. *Id.* at 2476-77.

The Sixth Circuit has applied this holding to state law design defect claims as well. *Strayhorn v. Wyeth Pharmaceuticals, Inc.* involved seven consolidated cases against a generic drug in which the plaintiffs sought compensation for injuries related to their usage of the drug. 737 F.3d at 382; 389-90. The court affirmed the district court's dismissal of the plaintiffs' failure-to-warn and design defect claims, holding that the Supreme Court's decisions in *Mensing* and *Bartlett* prevented both types of state tort law claims from going forward. *Id.* at 396.

With regards to Ms. Mitchell's design defect claim under Kentucky's PLA, this Court finds that it is also preempted by federal law. To the extent that Ms. Mitchell alleges Bidco should have altered the design of its hydrocodone bitartrate and acetaminophen, federal law prohibits Bidco from taking such action. *See Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2475 (2013); 21 U.S.C. § 355(j)(2)(A)(ii)-(iv). Thus, this claim is also preempted. *Id.*

## Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss, (Docket No. 9), is GRANTED. An appropriate Order and Judgment will issue separate from this Memorandum Opinion.

cc: Counsel
Cindy Mitchell
*Pro se*
P.O. Box 262
Paducah, KY 42002